Approved: _____
CECILIA VOGEL / SARAH MORTAZAVI
Assistant United States Attorneys

Before:  THE HONORABLE ROBERT W. LEHRBURGER
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - - x
                                       :
                                       :   **COMPLAINT**
UNITED STATES OF AMERICA               :
                                       :   Violation of
    - v. -                             :   21 U.S.C. § 846
                                       :
                                       :   COUNTY OF OFFENSE:
RUBEN AMADO, a/k/a "Venegas,"          :   BRONX
                                       :
                                       :
               Defendant.              :
- - - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      NELSON FLORES, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
(Narcotics Conspiracy)

      1.  From at least in or about February 2019, up to and including in or about November 2019, in the Southern District of New York and elsewhere, RUBEN AMADO, a/k/a "Venegas," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

      2.  It was a part and an object of the conspiracy that RUBEN AMADO, a/k/a "Venegas," the defendant, and others known and unknown, would and did distribute and possess with the

intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3. The controlled substances that RUBEN AMADO, a/k/a "Venegas," the defendant, conspired to distribute and possess with the intent to distribute were: (i) 400 grams and more of mixtures and substances containing a detectable amount of fentanyl, in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) mixtures and substances containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iii) mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4. I am a Special Agent with the FBI. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, and conversations that I have had with other law enforcement agents and individuals. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents, and the actions and statements of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my involvement in this investigation and my conversations with other law enforcement agents, I am aware that beginning in or around February 2019, law enforcement agents have been investigating drug trafficking activity by RUBEN AMADO, a/k/a "Venegas," the defendant, and associates.

6. Based on my involvement in this investigation, my conversations with other law enforcement agents, and my review of records, reports, and recordings, I have learned that between in or about February 2019 and in or about November 2019, two confidential sources made several controlled purchases of fentanyl from RUBEN AMADO, a/k/a "Venegas," the defendant, and a

2

co-conspirator ("CC-1"), several of which are summarized as follows:

    a.    In or about February 2019, a confidential source ("CS-1")[1] was contacted via WhatsApp by CC-1. During the WhatsApp conversations, CC-1, in substance and in part, offered to sell CS-1 methamphetamine and scheduled an in-person meeting for that purpose on or about February 11, 2019. On that date, CC-1 met with CS-1 and offered to provide CS-1 with samples of methamphetamine, heroin, and fentanyl pills that were made to look like oxycodone.

    b.    On or about February 27, 2019, at the direction of law enforcement officers, CS-1 met with CC-1 in the Bronx, New York, for the purpose of discussing a drug transaction. During the course of that meeting, which was not recorded, CC-1 told CS-1, in substance and in part, that the drug trafficking organization with which CC-1 was affiliated had received a large shipment of methamphetamine in California and had set aside approximately ten pounds of methamphetamine for CS-1. CC-1 provided CS-1 with two samples of a light brown powder and one small blue pill labeled "Oxy 30." Laboratory testing revealed that the light brown powder tested positive for heroin and the blue pill tested positive for fentanyl.

    c.    On or about March 7, 2019, at the direction of law enforcement, CS-1 and a second confidential source ("CS-2")[2] met with CC-1 and RUBEN AMADO, a/k/a "Venegas," the defendant. During that meeting, CC-1 sold CS-2 approximately 980 fentanyl pills, weighing approximately 105 grams, and

---

[1] CS-1 pleaded guilty to federal narcotics trafficking charges and is cooperating with law enforcement. CS-1 is cooperating in an effort to obtain leniency at sentencing. CS-1's information has been reliable and corroborated by independent information, resulting in numerous arrests and drug seizures.

[2] CS-2 pleaded guilty to federal narcotics trafficking and marriage fraud charges and was sentenced. CS-2 continues to cooperate for immigration relief and monetary compensation. CS-2's information has been reliable and corroborated by independent information, resulting in numerous arrests and drug seizures.

discussed future drug transactions.[3] Laboratory testing revealed that the pills tested positive for fentanyl. During that meeting, CC-1 stated, in substance and in part, that CC-1 would be able to sell CS-2 additional narcotics in the future.

    d. In or about April 2019, CS-1 communicated with CC-1 using WhatsApp and discussed, in substance and in part, CC-1 selling CS-1 approximately four kilograms of fentanyl for approximately $40,000 per kilogram. At the direction of law enforcement officers, on or about April 10, 2019, CS-1 met with CC-1 in the Bronx and obtained from CC-1 two clear plastic bags containing samples of suspected fentanyl. Laboratory test results of the contents of the plastic bags CS-1 collected indicate a positive result for fentanyl.

    e. On or about April 25, 2019, CS-1, CS-2, AMADO, and CC-1 met again in the Bronx for the purpose of completing a drug transaction. During that meeting, AMADO and CC-1 sold CS-2 approximately 1,000 suspected fentanyl pills, designed to look like oxycodone 30 milligram pills, for $9,000 and weighing approximately 109 grams. Laboratory test results for the pills were positive for fentanyl. During the meeting, CC-1 and AMADO also represented to CS-1 and CS-2, in sum and substance, that they were affiliated with a faction of the Sinaloa Cartel in Mexico. This meeting was recorded with audio and video.

    f. On or about July 22, 2019, CC-1 and CS-2 engaged in a text message exchange wherein CC-1 offered, in substance and in part, to sell CS-2 800 "botones" (*i.e.*, "buttons" in English), which I believe, based on my training and experience and involvement in this investigation, refers to fentanyl pills. On or about August 8, 2019, at the direction of law enforcement, CS-2 met with CC-1 in the Bronx, and purchased approximately 91 grams of suspected fentanyl pills from CC-1 for approximately $4,500. Laboratory test results for the pills indicate a positive result for fentanyl. This meeting was recorded with audio and video.

---

[3] The conversation during the meeting in the undercover vehicle was in Spanish and audio-recorded and has been translated by a Spanish interpreter. In addition, I speak Spanish and have reviewed the audio recording of the meeting.

4

     g. On or about September 16, 2019, at the direction of law enforcement, CS-2 met with CC-1 in the Bronx, and purchased approximately 500 suspected fentanyl pills, weighing approximately 116 grams, from CC-1, for approximately $4,500. Laboratory test results for the pills, which appear similar to the fentanyl pills previously purchased from AMADO and CC-1, remain pending. This meeting was recorded with audio and video.

    7. Based on my involvement in this investigation and my conversations with other law enforcement agents, I have learned that on or about August 19, 2019, the Honorable Gregory H. Woods, United States District Judge for the Southern District of New York, authorized law enforcement agents to intercept wire communications occurring over a telephone known to be used by CC-1 (the "CC-1 Phone"). I have reviewed draft English translations of draft transcripts and summaries (collectively, "linesheets") of phone calls, substantially all of which took place in Spanish, intercepted over the CC-1 Phone. Based on my review of these linesheets and conversations with other law enforcement officers, I have learned, among other things, the following:

     a. On or about August 20, 2019, at approximately 7:03 p.m. EST, CC-1, using the CC-1 Phone, placed an outgoing call to an individual later identified as RUBEN AMADO, a/k/a "Venegas," the defendant. The following conversation occurred, in substance and in part:

**AMADO:** How many "Botones"[4] do you still have left? I need some.

**CC-1:** Okay, how many do you need? 100, right?

**AMADO:** Yes, I need 100.

**CC-1:** 100? Okay. When do you want them?

**AMADO:** Well, they need them for later on.

**CC-1:** For tonight?

---

[4] As explained above, I believe "botones" to be code for fentanyl pills.

5

**AMADO:** Uh?

**CC-1:** I'll bring them to you tonight, then?

**AMADO:** Alright, man, Okay.

Based on my training and experience, and from my involvement in this investigation, including my review of prior and subsequent intercepts, I believe that AMADO reached out to CC-1 to arrange a pickup of 100 fentanyl pills ("botones"). I further believe that CC-1 agreed to supply AMADO with pills later that day.

b. On or about August 22, 2019, at approximately 9:56 p.m. EST, CC-1, using the CC-1 Phone, placed an outgoing call to AMADO. The following conversation occurred, in substance and in part:

**AMADO:** Yes, tell me. Tell me.

**CC-1:** --the package [PH] that they are going to send you, the one that you are going to order now . . . I was going to ask you . . .

**AMADO:** Yes, I'm going to--

**CC-1:** [OV] . . . uh, they want to try . . . see if you [guys] have something . . . In other words, that one is not bad, but they have something different. That's because the guy told me back then, when we spoke with him, that he had something different . . .

**AMADO:** [Aside] Take it out—take it out.

**CC-1:** See if they can send you a sample, man. Uh . . .

**AMADO:** [Aside] Yes.

**CC-1:** . . . see if they can send you a sample over here, you heard?

**AMADO:** The "food" stuff?

**CC-1:** The two of them, because both things are going to the same people, you see? But if you are in a place that . . . call me when you are by yourself so we can talk at ease.

6

**AMADO:**     Yes. Yes.

**CC-1:**      You heard?

**AMADO:**     Okay, yes, because I'm busy. Alright.

**CC-1:**      No—no problem, call me when you are by yourself.

Based on my training and experience, and from my involvement in this investigation, including my review of prior and subsequent intercepts, I have learned that the term "food" has been used as a code term to refer to narcotics. Based on the foregoing, I believe that, in the above call, CC-1 is informing AMADO that he has heard about a new batch of narcotics, and requests that AMADO reach out to his contacts to obtain a sample ("see if they can send you a sample over here, you heard?").

        c.   On or about August 30, 2019, at approximately 4:06 p.m. EST, CC-1, using the CC-1 Phone, placed an outgoing call to AMADO. The following conversation occurred, in substance and in part:

**CC-1:**      And the—and the little mints, when are they coming in?

**AMADO:**     Uh, that's what we are checking . . . that they are preparing that but I don't know, I don't know because . . .

**CC-1:**      Check, because people are asking for it, dude. I am going to . . . let me call my cousin to see if he has 100 at least, for . . . you know--

**AMADO:**     Um-huh.

**CC-1:**      --to see if [U/I].

**AMADO:**     Alright.

**CC-1:**      --if it arrives . . . that's that then. Find out about what I told you.

**AMADO:**     Right, right. The little "buttons" must be arriving around Monday.

7

| | |
|---|---|
| **CC-1:** | Oh, around Monday? |
| **AMADO:** | Yeah. |
| **CC-1:** | Yes, that's what I am asking you about . . . that's what I am . . . |
| **AMADO:** | Yes. Yes. Yes, yes [U/I]. |
| **CC-1:** | [OV] And-- |
| **AMADO:** | [OV] It's coming Monday. Okay, let me check today and I will let you know-- |
| **CC-1:** | [OV] And what about the "food," nothing? You haven't heard anything about that? |
| **AMADO:** | No, not yet, but they are getting a "photo" ready for me and let's see if I get the "photo" with the "little buttons." |
| **CC-1:** | Okay, okay, okay, Okay. Got it. So get on it, get on it. Go ahead. |
| **AMADO:** | Alright. |

Based on my training, experience, and involvement in this investigation, including my review of prior and subsequent intercepts, I have learned that individuals involved in narcotics trafficking commonly refer to narcotics by slang terms or code words; as stated above, I have further learned that "buttons" is a term that AMADO and CC-1 use to refer to fentanyl pills, and I have learned that "photo" is used to refer to a narcotics sample. I therefore believe that, in the above conversation, CC-1 and AMADO discuss, initially, the anticipated arrival date for a shipment of narcotics that customers have been requesting ("the little mints, when are they coming in?"), as well as a shipment of pills that they anticipate receiving Monday ("It's coming Monday"), and a sample of narcotics that AMADO anticipates receiving from his source of supply ("they are getting a 'photo' ready for me").

8.  On or about October 15, 2019, CS-1, at the direction of law enforcement, met with RUBEN AMADO, a/k/a "Venegas," the defendant, in the Bronx, and AMADO provided CS-1

with a sample of approximately 70 grams of suspected fentanyl powder. Laboratory test results remain pending. Previously, in the process of coordinating this narcotics transaction with CS-1 over the phone, AMADO referred to the narcotics as "feta," which CS-1 understood to mean fentanyl. The meeting on or about October 15, 2019 was recorded with audio and video.

9. On or about November 1, 2019, CS-1, at the direction of law enforcement, met with RUBEN AMADO, a/k/a "Venegas," the defendant, in the Bronx, and CS-1 purchased from AMADO approximately 509 grams of suspected fentanyl powder for approximately $20,000. Laboratory test results remain pending. Previously, in the process of coordinating this narcotics transaction with CS-1 over the phone, AMADO referred to the narcotics as "feta," which CS-1 understood to mean fentanyl. The meeting on or about November 1, 2019 was recorded with audio and video.

10. On or about November 6, 2019, CS-1, at the direction of law enforcement, met with RUBEN AMADO, a/k/a "Venegas," the defendant, in the Bronx, in order to collect additional fentanyl that AMADO owed to CS-1 from the previous transaction on or about November 1, 2019. During this meeting, AMADO provided CS-1 with approximately 127 grams of suspected fentanyl powder. In addition, AMADO provided CS-1 with samples of other narcotics, including approximately 38 grams of methamphetamine, and approximately 38 grams of heroin. During the meeting, AMADO identified for CS-1, in sum and substance, the types of narcotics that he was providing as samples to CS-1. Laboratory test results remain pending. The meeting was recorded with audio and video.

11. On or about November 22, 2019, at approximately 5:50 p.m. EST, CS-1, at the direction of law enforcement, drove in a vehicle ("Vehicle-1") and parked in the vicinity of Clay Avenue and East 174th Street, in the Bronx, for the purpose of purchasing two kilograms of fentanyl from RUBEN AMADO, a/k/a "Venegas," the defendant, at a price of $39,000, as previously arranged through phone communications. Shortly thereafter, AMADO approached Vehicle-1 carrying a bag, entered the passenger side of Vehicle-1, and showed CS-1 the contents of the bag he (AMADO) was holding. CS-1 recognized the contents of the bag to be what CS-1 believed was approximately two kilograms of fentanyl.

12. While RUBEN AMADO, a/k/a "Venegas," the defendant, was inside Vehicle-1, law enforcement agents approached Vehicle-1 and identified themselves as law enforcement agents. While the law enforcement agents were approaching Vehicle-1, AMADO exited Vehicle-1 and began running away from the law enforcement agents. AMADO was apprehended and arrested approximately one half-block away from where Vehicle-1 was parked.

13. After having been arrested, RUBEN AMADO, a/k/a "Venegas," the defendant, was advised of his *Miranda* rights and voluntarily waived them. AMADO subsequently stated to law enforcement, in substance and in part:

   a. AMADO had approached Vehicle-1 to sell two kilograms of fentanyl.

   b. There were narcotics inside his residence ("Apartment-1"), for which he provided the apartment number and location, which is in the Bronx.

14. On or about November 22, 2019, following the arrest of RUBEN AMADO, a/k/a "Venegas," the defendant, the Honorable Sarah Netburn, United States Magistrate Judge in the Southern District of New York, authorized a warrant for the search of Apartment-1, *i.e.*, AMADO's residence. Pursuant to that warrant, law enforcement agents conducted a search of Apartment-1 and recovered the following, among other things:

   a. Approximately three clear packages containing a substance that appears, based on agents' training and experience, to be methamphetamine;

   b. A clear plastic bag containing what appear, based on agents' training and experience, to be fentanyl pills; and

   c. Approximately two clear plastic zip lock bags containing a substance that appears, based on agents' training and experience, to be fentanyl.

10

WHEREFORE, deponent respectfully requests that RUBEN AMADO, a/k/a "Venegas," the defendant, be imprisoned, or bailed, as the case may be.

_____
Nelson Flores
Special Agent
Federal Bureau of Investigation

Sworn to before me this
25th day of November, 2019

_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK